# SEYFARTH SHAW LLP
ATTORNEYS

620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5507

Writer's e-mail
dkesselman@seyfarth.com

July 21, 2011

**VIA ECF AND FEDERAL EXPRESS**

Honorable Joanna Seybert
United States District Judge
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-9014

    Re:   *Hunter v. Kaufman Enterprises, Inc.*, Case No. 09-CV-5540 (JS) (AKT)

Dear Judge Seybert:

    We represent defendant Kaufman Enterprises, Inc. ("KEI") in the above-referenced action. We write in accordance with Your Honor's Individual Practice Rule IV(F)(2) to respectfully request a pre-motion conference as to Defendants' anticipated motion for summary judgment. The parties have exchanged Local Civil Rule 56.1 statements, copies of which are enclosed herewith.

### Background of Undisputed Facts

    KEI owns thirteen (13) McDonald's restaurants located on Long Island. Plaintiff Leon Hunter worked for KEI for twenty-two years, and has known owner Josh Kaufman and General Manager Ed Miller for many years. There is no dispute that in that time, Plaintiff had a good relationship with KEI management and never experienced any discriminatory animus towards him. In early January 2009, however, a female employee complained that Plaintiff had made sexually inappropriately comments to her that "she had a big butt and [her husband] was happy to have a big butt." Plaintiff denied the comment, claiming that he was merely trying to comfort her. Mr. Kaufman concluded that while the precise circumstances were unclear, the comment was inappropriate to make, but in light of Plaintiff's long-standing history with the company, decided only to transfer Plaintiff to the Levittown restaurant where he could get a fresh start. Just five weeks later, however, a sixteen year old female employee in KEI's Levittown restaurant complained that Plaintiff had inappropriately touched her in violation of KEI's sexual harassment policies. Because Mr. Kaufman had already given Plaintiff a second chance, Mr. Kaufman had no choice but to terminate Plaintiff's employment, and did so on February 27, 2009. Plaintiff was treated consistent with or better than other managers who engaged in such conduct.

    Yet, Plaintiff alleges that his termination was instead based on retaliation because after he was transferred to the Levittown restaurant, he complained to Mr. Miller (the General Manager) that he felt that Ms. Jaclyn Buckley was assigning him to the production (grill) area, rather than the front

BRUSSELS | WASHINGTON, D.C. | SAN FRANCISCO | SACRAMENTO | NEW YORK | LOS ANGELES | HOUSTON | CHICAGO | BOSTON | ATLANTA


The Honorable Judge Joanna Seybert
July 21, 2011
Page 2

of the store, because of his race (African American). In fact, Plaintiff's assignment to the production area on those shifts was precisely consistent with KEI's Shift Management policy, which called for the second manager on the shift (in those instances, Plaintiff) to be assigned to the production area, and Plaintiff admits that he did work in the front of the store at other times. Moreover, Plaintiff admits that neither Ms. Buckley never made any racially insensitive comments, and the fact is that Ms. Buckley was dating an African American and had never been accused of discrimination. Nevertheless, Plaintiff's complaint was immediately addressed with Ms. Buckley in a series of meetings that very day, and Plaintiff acknowledges that all of his issues with Ms. Buckley were resolved and that from then on any perceived hostility from Ms. Buckley "vanished."

Indeed, there were no issues relating to his complaint, and Plaintiff's employment was terminated later only after a second complaint of sexual harassment was filed against him. Importantly, Mr. Kaufman (who made the decision to terminate) was unaware of Plaintiff's discrimination complaint. Moreover, the lack of a retaliatory intent is further evidenced by the fact that <u>after</u> Plaintiff's complaint, KEI gave him a $5,000 interest-free loan, to be paid by back at $100 per week over the course of one year, making clear that no retaliatory plan against him existed.

**Hunter's Race Discrimination and Retaliation Claims Fail**

Plaintiff cannot establish a *prima facie* case of race discrimination because, *inter alia*, he was not terminated "under circumstances giving rise to an inference of discrimination." Plaintiff admits that he felt *no discriminatory animus* from KEI's management, nor were there any discriminatory comments in the workplace. *See Francis v. Pactiv Corp.*, 2007 U.S. Dist. LEXIS 20046 at *1 (E.D.N.Y. Mar. 21, 2007) (granting summary judgment as absence of discriminatory comments precludes an inference of discrimination.) Indeed, Plaintiff admits that KEI management treated him favorably and extended him promotions and raises throughout his employment. *James v. New York Racing Ass'n*, 233 F.3d 149, 152-53 (2d Cir. 2000) (affirming summary judgment because defendant's "recent promotion of plaintiff with a 30 percent raise" showed no discrimination). Plaintiff even admits that this claim is pure speculation and that he only "felt it's a possibility it may be because of [his] skin color." Such conclusory allegations are insufficient to defeat summary judgment. *Goenaga v. March of Dimes Birth Defects Found*, 51 F.3d 14, 18 (2d Cir. 1995) ("unsupported [factual] assertions ... conjecture or surmise" insufficient to state claim).[1]

Moreover, KEI had a plainly legitimate, non-discriminatory reason for discharging him: the second complaint of sexual harassment. *See Randolph v. CIBC World Markets*, 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005) (granting summary judgment as to race discrimination claim filed by black supervisor after allegations he engaged in sexual harassment); *Argueta v. North Shore Long Island Jewish Health Sys.*, 2003 U.S. Dist. LEXIS 20456, at 13 (E.D.N.Y. Nov. 6, 2003) (termination based on a reasonable belief of wrongdoing is legitimate nondiscriminatory reason as

---

[1] Likewise, there is no evidence of discriminatory animus with respect to Ms. Buckley's "treatment" of Plaintiff. Ms. Buckley's instructions that Plaintiff work the production area were consistent with KEI's Shift Management policy, Ms. Buckley also worked production, and Plaintiff worked the front of the store. Ms. Buckley's lack of discriminatory animus is further evident because her long-term boyfriend was African-American, and because Plaintiff admits that she treated *everyone* -- including other African-American employees -- better than she treated him. *See Adia v. MTA Long Island Rail Road Co.*, 2006 U.S. Dist. LEXIS 51045, at *19-20 (E.D.N.Y. 2006) (granting summary judgment because favorable treatment of other protected class members undermined any inference of discrimination).

13541040v.2





relevant inquiry "is not *what* happened, but rather, what the *decisionmakers believed* happened."). Nor can Plaintiff establish that his termination was pretextual, as the evidence shows that other non-Black managers were terminated in similar circumstances. *James*, 233 F.3d at 156.

Plaintiff similarly cannot establish his retaliatory discharge claim. KEI immediately addressed Plaintiff's complaint of race discrimination, and all problems in the workplace were resolved. Indeed, Plaintiff experienced *more favorable* treatment after his complaint, and was provided a company loan in the amount of $5,000, which was to be paid back to the company in $100 weekly increments -- showing that KEI anticipated Plaintiff remaining a long-term employee. Further, Plaintiff's termination for the second sexual harassment complaint was consistent with other managers accused of sexual harassment. Most importantly, Mr. Kaufman, the decisionmaker, was unaware of Plaintiff's complaint at the time he terminated his employment. *Murray v. Visiting Nurse Svcs. of N.Y.*, 528 F. Supp. 2d 257, 271-72 (S.D.N.Y. 2007) (granting summary judgment where decision-makers were unaware of plaintiff's complaint at time of termination).

**Hunter's Hostile Work Environment Claim Fails**

Plaintiff claim of a hostile work environment on the basis of his treatment by Ms. Buckley during his five weeks of employment at the Levittown restaurant fails because his own testimony makes clear that KEI's work environment was not remotely "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [his] employment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Plaintiff cannot identify a single racial comment in the workplace, nor can he identify any hostility towards him because of his race. Instead, he points merely to "negative vibes," his assignment to the production area, and Ms. Buckley's impoliteness on the handful of occasions that he worked with her. Such generalized work issues do not amount to an abusive, unlawful working environment, let alone one that is severe or pervasive. *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 250 (W.D.N.Y. 2003) ("A 'hostile' work environment is not synonymous with an unpleasant, harsh, combative or difficult work environment"). Finally, this claim fails because KEI had well-established policies against harassment, a complaint procedure which Plaintiff utilized, and following Plaintiff's complaint, he experienced no further problems in the workplace. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

For each of these reasons, Plaintiff's claims cannot survive summary judgment, and KEI respectfully requests a pre-motion conference. We respectfully note that counsel (Dov Kesselman) is scheduled to be out of the country between July 28 and August 19, and therefore request that the pre-motion conference be scheduled thereafter. Thank you.

Respectfully submitted,

SEYFARTH SHAW LLP

Dov Kesselman

cc: William Timmons, Esq.