**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
LEON HUNTER,

                              Plaintiff,

              - against -

KAUFMAN ENTERPRISES, INC., d/b/a
McDONALD'S,

                              Defendant.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 09-5540 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

    Presently before the Court is Plaintiff's motion for leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15. *See* DE 36. Leon Hunter (hereafter "Plaintiff" or "Hunter"), appearing *pro se* at the time, initiated this action by filing a Complaint on December 16, 2009, alleging that he was discriminated against by his employer Kaufman Enterprises, Inc. d/b/a McDonald's (hereafter "McDonald's") based on his race and color and that the Defendant retaliated against him by terminating his employment. *See* DE 1. In the proposed Amended Complaint, Plaintiff, now with the benefit of counsel, advances additional factual information and asserts the following two causes of action: (1) retaliatory termination of employment after allegations of racial discrimination; and (2) breach of implied employment contract.[1] The Defendant, although not objecting to the previously pled retaliation claim, argues that Plaintiff's attempt to amend to add a claim for breach of implied employment contract would be futile.

---

[1]    In the proposed Amended Complaint, the Plaintiff withdraws his Title VII race discrimination claim.

Based upon my review of the arguments advanced by both parties as well as the applicable case law, the Plaintiff's motion to amend to add a claim for breach of an implied employment contract is DENIED. However, Plaintiff is permitted to file an Amended Complaint solely for the purpose of clarifying the retaliatory termination claim.

## II.   FACTUAL BACKGROUND[2]

Plaintiff Leon Hunter worked for McDonald's for approximately 22 years, starting at the age of 16 and working his way up to the position of Second Assistant Manager. Am. Compl. ¶ 11. After being transferred from a McDonald's in Amityville to one located in Levittown, the Plaintiff experienced friction with co-manager Jackie Buckley ("Buckley"). *Id.* ¶ 15. During a "sit down" between the Plaintiff, Buckley and Ed Miller, the General Manager of the Levittown store, the Plaintiff expressed his belief that he was being discriminated against by Buckley based upon the color of his skin. *Id.* ¶ 22. According to the Plaintiff, Buckley terminated the meeting abruptly. *Id.* ¶ 23.

The Plaintiff states that approximately one week after this failed meeting, he was accused, for the first time, of sexual harassment.[3] *Id.* ¶ 25. Hunter met with Miller regarding the accusation. According to the Plaintiff, Miller did not conduct an inquiry into this un-substantiated and false claim. *Id.* ¶¶ 25-26. In fact, Plaintiff maintains that he asked Miller to review the videotape surveillance of the store but that Miller did not do so. *Id.* ¶ 30. The

---

[2]    Although the Amended Complaint attached to Plaintiff's motion is merely a proposed pleading, in light of the fact that the original Complaint was submitted *pro se* using a standard employment discrimination complaint provided to *pro se* litigants, the Court finds it beneficial to draw the relevant facts from the proposed pleading.

[3]    In his original Complaint, Plaintiff states he was told that he had given a back massage to a 16-year old girl on February 19, 2009, which Plaintiff denied.

Plaintiff subsequently met with McDonald's Chief Executive Officer, Josh Kaufman, and McDonald's Area Supervisor, Denis Stickleman, at which time he was informed that he was terminated. *Id.* ¶ 32. The Plaintiff asserts that neither Kaufman nor Stickleman conducted any serious inquiry into the events surrounding either his allegation of racial discrimination or the sexual harassment allegation made against him. *Id.* ¶ 35. According to the Plaintiff, he was terminated based upon the sexual harassment allegation. *Id.* ¶¶ 28, 36.

### III. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court "should freely give leave when justice so requires" and such leave is in the court's discretion. Fed. R. Civ. P. 15(a); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000). Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *SCS Commc'n, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004) (stating that under Rule 15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent.") (emphasis in original).

A proposed amendment is futile when it fails to state a claim upon which relief can be granted. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). A determination of futility on the merits is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005); *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Under Rule 12(b)(6), the court must accept as true the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans*, 421 F.3d 96, 100 (2d Cir. 2005). Moreover, the review is limited to "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

A complaint should not be dismissed unless it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to withstand a motion to amend, a complaint must "raise a right to relief above the speculative level"). "A complaint is inadequately pled 'if it tenders naked assertion[s]' devoid of 'further factual enhancement.'" *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods Corp.*, No. 09-CV-8285, 2010 WL 3910590, at *4 (S.D.N.Y. Sept. 29, 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The opposing party bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. City of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## IV. DISCUSSION

In light of the fact that Plaintiff now has counsel, the Court agrees that amending the Complaint to allow for counsel to further describe Plaintiff's contentions would be beneficial to all parties. However, any additional claims that appear in the proposed pleading must not be a futile endeavor. Although Plaintiff's counsel claims that the Amended Complaint does not substantially deviate from the allegations and assertions set forth in the original Complaint, the Court finds otherwise. The proposed Amended Complaint seeks to add a new state law claim for breach of implied contract. This new claim is the only portion of the Amended Complaint to which the Defendant objects.

According to Plaintiff, the Defendant breached an implied contract based upon covenants of good faith and fair dealing, which are exceptions read into at-will employment. *See* Mem. in Supp. of Pl.'s Mot. for Leave to File Am. Compl. ("Pl.'s Mem.") at 5. The Plaintiff maintains that the case law "is not abundantly clear" relative to his unique fact pattern. The Plaintiff also argues that the Defendant, through its actions, took the case "out of the 'at will' universe" because Defendant terminated the Plaintiff on the unfounded grounds that he had sexually harassed another person whom the Defendant would not identify. Therefore, the Plaintiff contends that the Defendant owed the Plaintiff an affirmative duty of due diligence to properly investigate, authenticate and produce records of the events surrounding the sexual harassment allegation against the Plaintiff. Lastly, the Plaintiff asserts that as a matter of public policy, if a company creates policies and protocols to deal with issues of sexual harassment and racial discrimination in the workplace, then that company subjects itself to the due diligence required to enforce the same. *Id.* at 5-6.

The Defendant's opposition is simply that the Plaintiff's attempt to create a new public policy exception to at-will employment in New York by reading in a duty of good faith and fair dealing ignores long-standing law and has been rejected by numerous courts in New York. *See* Mem. of Law of Def. Kaufman Enters., Inc. in Partial Opp. to Pl.'s Mot. for Leave to Serve an Am. Compl. ("Def.'s Mem.") at 2-8. Therefore, the Defendant maintains that the Plaintiff's amendment to add such a cause of action would be futile. The Court agrees.

As a general matter, New York courts continue to hold that an employee is presumed to be hired at-will, meaning that the employment can be terminated by either party, at any time, for any or no reason whatsoever, so long as the termination is not effected for a discriminatory reason. *See Sharkey v. J.P. Morgan Chase & Co.*, No. 1-CV- 3824, 2011 WL 135026, at *9 (S.D.N.Y. Jan. 14, 2011); *Myers v. Hirst*, No. 09-CV-4436, 2011 WL 116142, at *4 (S.D.N.Y. Jan. 13, 2011); *Bernhardt v. Tradition N. Am.,* 676 F. Supp. 2d 301, 304 (S.D.N.Y. 2009). Furthermore, there is no exception to the at-will relationship even if the firing violated public policy. *See Lobosco v. N.Y. Tel. Co.*, 96 N.Y.2d 312, 316 (2001). However, the presumption that an employment is at-will may be rebutted and New York will recognize an action for breach of contract where the "employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy." *Id.*; *see also Baron v. Port Auth. of N.Y.,* 271 F.3d 81, 85 (2d Cir. 2001) (concluding that an employee "alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's rights of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment"). However, the New York Court of Appeals has warned

6

that this is a "difficult pleading burden." *See Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 334-35 (1987).

In the instant case, the Court concludes that there is no basis to rebut the presumption that the employment relationship between the Plaintiff and McDonald's was anything other than at-will employment. First, the Plaintiff is cognizant of the heavy burden he bears to take his employment relationship out of the "at-will" realm as reflected in his prompting this Court to create an *exception* to the at-will employment doctrine in this case. Second, the Plaintiff fails to identify any express written policy limiting the employer's rights of discharge. Instead, Plaintiff merely alleges that Defendant created standards and internal company protocols, contained in the company's handbook, for dealing with termination decisions.[4] Notwithstanding the lack of an

---

[4] The Defendant submitted to the Court a copy of McDonald's Crew Handbook and McDonald's Management Handbook (collectively, "Handbooks"). *See* Kesselman Decl., Exs. A-B. at 24. However, "in making futility determinations [in a motion to amend], the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits, or incorporated by reference." *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04-CV-2867, 2006 WL 6217754, at *3 (S.D.N.Y. Mar. 31, 2006). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *See DeLucia v. Accessit Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). The proposed Amended Complaint does not make any definite and substantial reference to the specific Handbooks submitted. *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (holding that an extraneous document was not incorporated by a brief reference to it in one paragraph of the complaint). In fact, the Amended Complaint does not point to any express written policy, let alone any specific document in which the policies were contained. Morever, a court cannot consider extrinsic evidence if there is a dispute "regarding the authenticity or accuracy of the document" or "the relevance of the document" to the dispute. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Here, Plaintiff argues that the submitted Handbooks were published *after* Plaintiff's termination. Plaintiff therefore challenges the accuracy and relevance of the submitted Handbooks. Although Defendant attempts to rectify this dispute by submitting deposition testimony of the Plaintiff, such extrinsic evidence cannot be considered by the Court. *See Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (concluding that [defendant's] deposition cannot be considered 'incorporated by reference' or 'integral' to the complaint and therefore the Court may not consider it.").

express policy, the New York Court of Appeals has held:

> [r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements. . . . It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision.

*Lobosco*, 96 N.Y.2d at 317. Since the Plaintiff fails to plead the existence of any express written policy which limits McDonald's right to discharge an employee, the Court declines to create an exception to New York's at-will employment doctrine and further declines to recognize an action for breach of contract in this instance.

In addition, to the extent the Plaintiff is asserting a claim pursuant to an alleged duty of an employer to follow its own internal policies, such a claim also fails. In New York, "a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim, unless, *inter alia*, mutual assent to enter into an implied-in-fact contract is shown." *Daniel v. Long Island Hous. P'ship*, No. 08-CV-01455, 2009 WL 702209, at *10 (E.D.N.Y. Mar. 13, 2009). Here, the Plaintiff has failed to identify what specific policies were mutually assented to by the Defendant to create an implied-in-fact contract which were then not followed by the Defendant. Instead, the Plaintiff, in a conclusory fashion and without reference to any specific policy, argues that the Defendant did not properly investigate and produce evidence of the alleged sexual harassment. In fact, in a similar action brought by a former employee who was terminated after sexual harassment accusations were lodged against him, the New York Court of Appeals dismissed the plaintiff's breach of contract action. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999). In so doing, the New York Court of Appeals held that the defendant:

> [N]owhere reflected an intent that the provisions of its Code would become terms of a discrete, implied-in-fact agreement, for purposes such as are alleged in this lawsuit. The Code itself is heavily informational in nature and does not express or support the implication of any promise on the part of the [defendant]. While the Code and its attendant regulations promulgate the [defendant's] sexual harassment policy and provide procedures for dealing with sexual harassment claims, [plaintiff's] essential employment duties and rights are only indirectly affected by these provisions. Finally, in this regard, [defendant's] handbook clearly states that it can be altered at any time (impliedly unilaterally), and cautions readers and affected persons to seek out the most updated edition. That feature is hardly the harbinger of a legally binding set of arrangements.

*Id.* This Court concludes that the Plaintiff failed to identify what specific provisions were purportedly not followed by the employer. Furthermore, the Plaintiff has not established the intent of the Defendant to create an implied-in-fact agreement through any handbook provisions. Consequently, the Plaintiff's claim for breach of contract based on the Defendant's alleged failure to follow its own internal policies, irrespective of the subject matter, cannot stand. *Daniel*, 2009 WL 702209, at *13; *Maas*, 94 N.Y.2d at 94.

Likewise, Plaintiff's request for the Court to recognize a good faith and fair dealing exception to at-will employment here is also rejected because "the New York Court of Appeals has regularly declined to alter at-will employment relationships through the imposition of implied contractual terms." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393, 2007 WL 2780390, at *9 (S.D.N.Y. Sept. 20, 2007). Although New York recognizes an implied obligation of good faith and fair dealing on the part of a party to a contract, "[n]o obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983). With regard to at-will employment, New York courts have concluded that no obligation can be implied because such an obligation would

9

be inconsistent with the employment relationship. *See Horn v. N.Y. Times*, 100 N.Y.2d 85, 96 (2003) ("We have consistently declined . . . to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts."); *De Petris v. Union Settlement Ass'n.*, 86 N.Y.2d 406, 410 (1995) (holding that New York State "neither recognizes a tort of wrongful discharge nor requires good faith in an at-will employment relationship"); *Robertazzi v. Cunningham*, 294 A.D.2d 418, 742 N.Y.S.2d 115 (2d Dep't 2002) (dismissing cause of action for breach of duty of good faith and fair dealing "as it is well established that there is no implied obligation of good faith and fair dealing in an employment at will"). This finding has been echoed in the federal courts. *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 422 (E.D.N.Y. 2010) ("Nor can plaintiff turn to her at-will employment or public policy generally to find an implied covenant of good faith on which to base her lawsuit."); *Baguer*, 2007 WL 2780390, at *8 ("In the context of an at-will employment contract, this means that 'it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination.'") (quoting *Murphy*, 58 N.Y.2d at 304); *Carchidi v. Kenmore Dev.*, No. 98-CV-235, 2002 WL 31655006, at *2 (W.D.N.Y. Oct. 8, 2002) ("New York Courts have rejected the argument that an employer has an implied obligation of good faith and fair dealing with respect to an at-will employment relationship.").

Ironically, instead of referring to a single case which supports the Plaintiff's implied contract theory for cases involving sexual harassment and racial discrimination, the Plaintiff faults the Defendant for failing to offer any case law specific to the issues presented here. *See* Pl.'s Reply at 7-12. Not only is the Plaintiff's attempt to distinguish or narrow the holdings of

the numerous cases cited by the Defendant unavailing, but "there is a clear line of cases in New York upholding a strict reading of an employer's right to terminate an at-will employee, *even for allegedly 'improper' motives*." *Baguer*, 2007 WL 2780390, at *9 (emphasis added). As such, the Court declines to recognize the exception to at-will employment articulated by the Plaintiff.

Lastly, the Court is compelled to address the Plaintiff's plea for this Court to establish new law in the State of New York by creating an exception to at-will employment by instilling covenants of good faith and fair dealing into the employment relationship where allegations of sexual harassment or racial discrimination are involved. As the New York Court of Appeals has noted:

> While the twentieth century featured significant statutory inroads into the presumption of at-will employment, most notably with the passage of the National Labor Relations Act in 1935 and Title VII of the Civil Rights Act of 1964, American courts have proved chary of creating common-law exceptions to the rule and reluctant to expand any exceptions once fashioned.

*Horn*, 100 N.Y.2d at 92. This Court takes the view, echoed by courts throughout this century, that significant alterations to employment relationships should be left to the Legislature. *See, e.g.*, *id.* at 92-93; *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 336 (1987); *Murphy*, 58 N.Y.2d at 301-302. However, by declining to create an exception to at-will employment, this Court is not closing the door on Plaintiff's ability to go forward on his retaliatory termination cause of action. The Defendant's contention that the Plaintiff was terminated due to the allegation of sexual harassment is a defense that the Plaintiff will have every opportunity to rebut as this case makes it way through the litigation process.

V. <u>**CONCLUSION**</u>

For all the foregoing reasons, Plaintiff's motion to amend to add a claim for breach of an implied employment contract is DENIED.  However, Plaintiff is permitted to file an Amended Complaint to clarify the retaliatory termination claim.

**SO ORDERED.**

Dated: Central Islip, New York
August 8, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge